OLWELL, Administrator, Respondent, vs. MILWAUKEE STREET RAILWAY COMPANY, Appellant.

. *January 29 — February 18, 1896.*

(1, 2) *Evidence: Record of coroner's inquest: Reversal of judgment.* (3) *Instructions to jury: "Ordinary care."* (4) *Verdict: Separation of jury.*

[1. Whether the record of a coroner's inquest upon the body of a person accidentally killed is admissible in an action to recover damages for such killing, not determined.]

2. A judgment will not be reversed for the rejection of evidence unless it affirmatively appears that such evidence would have had some bearing on the controversy.

3. A charge to the jury defining ordinary care as "such care as the great majority of men would use in like or similar circumstances," was not erroneous.

4. Where the jury, after answering a part of the questions submitted for a special verdict, thought that it thereby became unnecessary to answer the others, and thereupon, as the court had directed, sealed the verdict and separated and on the following morning brought the verdict into court, it was not error to send them out again to answer the other questions, it not being claimed that their action was dishonest or that any of them were subject to any improper influence during their separation, and not being shown that there was any opportunity for the exercise of such influence.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The plaintiff's intestate, a boy two years and seven months of age, was on the 4th day of May, 1894, run over and killed by one of the defendant's electric street cars, on one of the public streets of the city of Milwaukee; and this action is brought, under the statute, for the benefit of the parents of the deceased, claiming that such death was caused by the negligence of defendant's employees. The defendant denies negligence on its part, and alleges contributory negligence on the part of the boy and of his father and mother.

The case was submitted to the jury upon a special verdict, and, as the jury were charged just before adjournment, they were told that, if they found a verdict during the night, they might seal the same and bring it into court at 10 o'clock A. M. on the following day. It appears by the record that at 9 o'clock in the evening the jury arrived at a verdict, as they supposed, and sealed it, separated, and came into court on the following morning, and presented it to the court in the following form:

"(1) Did Ralph Rice come to his death by one of the defendant's cars running over him on Clinton street, in this city, on May 4, 1894? *Answer* (by court). Yes. (2) Was the motorman of defendant's car guilty of a want of ordinary care, which proximately caused the injury? *A.* Yes. (3) Was Joseph Rice the custodian of the child at the time of the accident? *A.* ——. (4) If you answer the third question in the affirmative, was said Joseph Rice guilty of a want of ordinary care, which contributed proximately to the injury? *A.* ——. (5) Was the mother of Ralph Rice guilty of a want of ordinary care, which contributed to the injury? *A.* ——. (6) If the court is of the opinion that plaintiff should recover, at what sum do you assess his damages? *A.* $1,500."

At this time the plaintiff was present in court, with his attorney; but the defendant's attorneys were not present, although an attorney employed as clerk in their office was present to hear the verdict, but without authority to represent his firm in the matter. Upon looking at the verdict the presiding judge returned it to the jury, and directed them to retire and answer the remaining questions which they had left unanswered. Thereupon they retired again, and soon returned with a complete verdict; having answered the third question "Yes," and the fourth and fifth questions "No." This verdict was received and entered in the usual manner. A motion for a new trial was made, based in part

upon the ground that the answers to the third, fourth, and fifth questions were void on account of the separation of the jury. The motion was overruled, and judgment for the plaintiff rendered on the verdict, from which defendant appealed.

For the appellant there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. H. Wahl*. They contended, *inter alia*, that the record of a coroner's inquest is admissible in evidence in any proceeding, purely as such and independent of any other rule of admissibility. 1 Starkie, Ev. (6th Am. ed.), *260; 1 Greenl. Ev. §§ 543, 556; Best, Ev. §§ 219, 593; R. S. ch. 200; *U. S. L. Ins. Co. v. Vocke*, 129 Ill. 557, 566; *People v. Devine*, 44 Cal. 452, 458; *Burridge v. Earl of Sussex*, 2 Ld. Raym. 1292; *Rex v. Harrison*, 12 How. St. Tr. 825; *Sergeson v. Sealey*, 2 Atk. 412; *Leighton v. Leighton*, 1 Strange, 308; *Rex v. Eriswell*, 3. Term, 713; *Prince of Wales Asso. Co. v. Palmer*, 25 Beav. 605. Similarly the records of inquisitions regarding lunacy are always admissible in evidence. *Faulder v. Silk*, 3 Campb. 126; *Sergeson v. Sealey*, 2 Atk. 412. Likewise inquests of office. *Stokes v. Dawes*, 4 Mason, 268. The court erred in sending out the jury for the purpose of answering the third, fourth, and fifth questions, after it had dispersed the evening before. Thompson & M. Juries, § 336, and cases there cited; 2 Thomp. Trials, § 2552; *Sutliff v. Gilbert*, 8 Ohio, 405; *Blesch v. C. & N. W. R. Co.* 48 Wis. 196; *Blake v. Blossom*, 15 Me. 394; *Farrell v. Hennesy*, 21 Wis. 632; *Douglass v. Tousey*, 2 Wend. 352.

For the respondent there was a brief signed by *Lawrence A. Olwell, in pro. per.*, and *Frank M. Hoyt*, of counsel, and oral argument by *Mr. Olwell*. They argued, among other things, that the record of the coroner's inquest is not competent evidence. The plaintiff was not a party to the proceedings before the coroner, was not present, and had no opportunity to examine or cross-examine any of the witnesses who ap-

Olwell vs. Milwaukee Street R. Co.

peared and gave testimony. The record of the coroner was offered generally. It may have contained matter which, under no construction of the law of evidence, would be relevant, material, or competent. The coroner was the sole judge of the admissibility of testimony offered or admitted in the proceedings before him. The right of an interested party to cross-examine was wholly within the discretion of the coroner. The law did not oblige him to reduce the testimony to writing. Sec. 4872, R. S. There was no proof that the record offered contained all the evidence taken at the inquest. Such a record is inadmissible. *Cook v. N. Y. C. R. Co.* 5 Lans. 401; *State v. Row,* 81 Iowa, 138; *Whitehurst v. Comm.* 79 Va. 556; *Jackson v. Crilly,* 16 Colo. 103. The jury may, at any time before they are discharged, alter their verdict in any manner they desire, or the court has the power and it is its duty, if upon opening the verdict it be found inconsistent or incomplete or to contain error in any particular, to send the jury out to rectify it. This may be done regardless of whether there has, prior to such action on the part of either court or jury, been a separation of the jury. *State ex rel. White Oak Springs v. Clementson,* 69 Wis. 628; *High v. Johnson,* 28 id. 72; *Fick v. Mulholland,* 48 id. 413, 419; *Urbanek v. C., M. & St. P. R. Co.* 47 id. 59; *Warner v. N. Y. C. R. Co.* 52 N. Y. 437, 440; 28 Am. & Eng. Ency. of Law, 411, note 1 and cases cited; *Pehlman v. State,* 115 Ind. 131; *Scott v. Chope,* 33 Neb. 90; *Maclin v. Bloom,* 54 Miss. 365; *Vicksburg, S. & P. R. Co. v. Elmore,* 46 La. Ann. 1236; *Loudy v. Clarke,* 45 Minn. 477; *Cleveland, C., C. & St. L. R. Co. v. Monaghan,* 140 Ill. 474; *Sanitary Dist. v. Cullerton,* 147 id. 385; *Ft. Wayne v. Durnell,* 13 Ind. App. 669; *Consolidated Coal Co. v. Maehl,* 130 Ill. 551.

WINSLOW, J. Three questions are raised by the appellant:

1. The record of a coroner's inquest, which was held on the body of the child three days after the accident, was

offered in evidence by the defendant, and excluded by the court. This ruling is claimed to have been erroneous. Upon what principle it can be claimed that this record can affect in any way the rights of private parties, who were not parties to the proceeding, is not quite-clear, although it must be admitted that there are authorities to that effect. *U. S. L. Ins. Co. v. Vocke*, 129 Ill. 557, and cases there cited. We find it unnecessary to decide the question here, however. If admissible at all, it must appear affirmatively that it would have had some bearing on the controversy, in order to justify reversal of the judgment on account of its rejection. Error must be affirmatively shown. There is no suggestion of its contents preserved in the bill of exceptions, nor is there any offer or statement as to what fact was found by it which would have any bearing on the present controversy. It may be that the inquest resulted simply in a finding that the child came to its death by being run over by the car. If such was the fact, its rejection could not be erroneous, because that fact was admitted. Under these circumstances it cannot be said that error is shown.

2. In charging the jury the trial judge defined ordinary care as " such care as the great majority of men would use under like or similar circumstances." This expression is criticised as inaccurate, and it is said that ordinary care is " such caution and prudence as the great majority of mankind observe *in their own business and concerns*, or, rather, such care as a person of ordinary prudence would exercise in the same relation and under similar circumstances and conditions." This seems like carrying criticism to extreme lengths, especially in view of the fact that no instruction on the subject was requested by the appellant. The definition given by the court is substantially in accord with the decisions of this court. *Dreher v. Fitchburg*, 22 Wis. 675; *Duthie v. Washburn*, 87 Wis. 231.

3. It is claimed that the jury could not be sent back to

perfect their verdict after their separation. It seems that the jury thought that, after answering the first and second questions in the affirmative, it became unnecessary for them to answer the third, fourth, and fifth questions, and so they sealed their verdict and separated. It is not claimed that their action was dishonest or that there was any ulterior purpose in it, nor is it claimed that any of the jury were subject to any improper influence during their separation, nor is it shown that there was any chance or opportunity for such influence to be exercised. Under these circumstances, we think it was competent for the court, in its discretion, to send them out to perfect their verdict. *High v. Johnson*, 28 Wis. 72; *Douglass v. Tousey*, 2 Wend. 352; *Warner v. N. Y. C. R. Co.* 52 N. Y. 437; *Maclin v. Bloom*, 54 Miss. 365; *Loudy v. Clarke*, 45 Minn. 477; *Consolidated Coal Co. v. Maehl*, 130 Ill. 551. If it were shown in such a case that there had been any improper conduct on the part of any of the jury during their separation, or should facts be shown which would raise a well-founded suspicion thereof, it would doubtless be the duty of the court to set aside the verdict and grant a new trial; but, as before remarked, no such showing is made in the present case.

*By the Court.*— Judgment affirmed.