**COMMERCIAL STANDARD INS. CO. et al. v. CASTER.**

**No. 1325.**

Court of Civil Appeals of Texas. Waco.

March 30, 1933.

Rehearing Denied May 4, 1933.

D. A. Frank and W. Porter Bondies, both of Dallas, and M. D. Jones, of San Antonio, for appellants.

H. C. Carter, Randolph Carter, C. G. Carter, and P. J. Lewis, all of San Antonio, for appellee.

STANFORD, Justice.

This is a suit by Paul M. Caster against Frank L. Norton and Commercial Standard Insurance Company, defendants, brought to recover damages on account of personal injuries alleged to have been received in a collision between a truck driven by the employees of the said Frank L. Norton on or about May 19, 1930, in which appellee, Paul M. Caster, lost his left arm, same being entirely torn from his body. Commercial Standard Insurance Company was joined as a defendant, plaintiff alleging that said company had issued a policy of liability insurance for the protection of defendant Frank L. Norton to the extent of $5,000 for damages resulting to one person from collision and that said contract inured to the benefit of plaintiff to the extent of another $5,000.

The cause was submitted to the jury upon the following special issues:

1. "Did the defendant or his employees cause or permit a boomer handle to protrude from the left hand side of the truck on the occasion in question?" To which the jury answered: "Yes."

2. "Was it negligence for the defendant or his employees to cause or permit the boomer handle to protrude from the left hand side of the truck, if you find such to be the case?" To which the jury answered: "Yes."

In connection with question No. 2, and the following questions you are instructed, "negligence is the failure to exercise ordinary care; and ordinary care is that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances."

3. "Did such negligence, if any, directly cause the accident and any injury to the plaintiff, as alleged in the petition?" To which the jury answered: "Yes."

4. "At the time of the accident did the defendant's employee operate the motor truck in question upon its left side of the highway?" To which the jury answered: "Yes."

5. "Was it negligence to operate the motor truck upon its left side of the highway, if you find such to be the case?" To which the jury answered: "Yes."

6. "Did such negligence, if any, directly cause the accident, and any injuries to the plaintiff as alleged in the petition?" To which the jury answered: "Yes."

7. "Did the defendant's employee operate said truck so close to plaintiff's automobile that the attachments on the truck struck plaintiff's arm?" To which the jury answered: "Yes."

8. "Then did this constitute negligence?" To which the jury answered: "Yes."

9. "Did such negligence, if any, directly cause the accident and any injuries to the plaintiff as alleged in the petition?" To which the jury answered: "Yes."

10. "Did the defendant's employee cause or permit the chalk or block on the rear bolster to protrude out beyond the side of the truck?" To which the jury answered: "Yes."

11. "Then did this constitute negligence?" To which the jury answered: "Yes."

12. "Did such negligence, if any, directly cause the accident and injuries to the plaintiff?" To which the jury answered: "Yes."

In all the remaining special issues the jury answered that the plaintiff was not guilty of contributory negligence. The court defined "contributory negligence," "proper lookout," and "unavoidable accident," as follows:

"In connection with question No. 13 and the following questions, you are instructed that the term 'contributory negligence' as used in this charge means, 'negligence on the part of the plaintiff which directly contributed to cause the accident and the injury.' "

"In this connection, you are instructed that a 'proper lookout' is such a lookout as an ordinary prudent person would keep under the same or similar circumstances."

"In this connection, you are instructed that an 'unavoidable accident' is an accident not caused by negligence of either party."

"If, in response to the foregoing questions, you have answered that the defendant's employee was negligent, and that such negligence, if any, caused the injury to the plaintiff, and if you have also answered that the plaintiff was not guilty of contributory negligence, then you will answer the following question; otherwise, you need not answer the following question":

No. 34: "What amount of damages, if any, would, if paid now, reasonably compensate the plaintiff, Paul M. Caster, for the injuries, if any, sustained by him which are shown by the evidence?" To which the jury answered: "$10,000.00."

Upon the above findings of the jury, the court entered judgment in favor of plaintiff and against defendant Frank L. Norton for $10,000, $5,000 of which was assessed against both defendants jointly and severally, and $5,000 against Frank L. Norton alone. Motion for new trial was duly filed and overruled, to which the defendants duly excepted and gave notice of appeal, and said cause is here presented to this court for review.

## Opinion.

■ Under appellant's first assignment of error it contends that the court erred in failing to define the terms used in said charge and to give a proper definition of "burden of proof," "preponderance of the evidence," "negligence," "proximate cause," "unavoidable accident," "sole cause," and "directly caused." This assignment of error is multifarious and is not entitled to be considered. A good assignment points out and identifies a single part of the proceedings, and, if an assignment asserts that the court erred in two or more different parts of the proceedings upon which arise different questions, it is multifarious and comes under the condemnation of the rules. The above assignment complains of seven alleged errors in one assignment. It violates the rule requiring each error relied upon to be expressly and distinctly specified and that no assignment shall express more than one specification of error. Karotkin Furniture Co. v. Decker (Tex. Com. App.) 50 S.W.(2d) 795; Cammack v. Rogers, 96 Tex. 457, 73 S. W. 795; Clarendon Land Investment Agency Co. v. McClelland Bros., 86 Tex. 187, 23 S. W. 576, 1100, 22 L. R. A. 105; Ferguson v. Washburn (Tex. Civ. App.) 4 S.W.(2d) 574, 575; Phoenix Furniture Co. v. Kay (Tex. Civ. App.) 10 S.W.(2d) 422, 424; Belt v. McGehee (Tex. Civ. App.) 9 S.W.(2d) 407; Myers v. Walker (Tex. Civ. App.) 8 S.W.(2d) 550; Jones v. Williams (Tex. Civ. App.) 14 S.W.(2d) 300 (writ refused).

■■ While this assignment is clearly multifarious and the propositions thereunder are not entitled to consideration, yet we will briefly discuss same. It will be noticed that appellant contends it was the duty of the court to define "burden of proof," "preponderance of evidence," "proximate cause," "unavoidable accident," "sole cause," and "directly caused." Usually it is the duty of the trial court to instruct the jury upon whom the burden of proof rests, but it is never the duty of the court to define the term "burden of proof," and the same may be said of "preponderance of evidence." The court often instructs the jury, in effect, that their verdict should be based upon the preponderance of the evidence, but the court seldom, if ever, defines "preponderance of the evidence." The court did not define the term "proximate cause" because said term was not used in the court's charge. It was not necessary to define "sole cause." The question of sole cause was not involved in this case. Neither do we think it was the duty of the court to define the term "directly caused," in that such term is not a legal term and is so simple and clear in its meaning that it was not necessary for the court to undertake to define same. The court did define in this case, and correctly so, the terms "negligence," "ordinary care," "contributory negligence," "proper lookout," and "unavoidable accident," and we think the court's instruction defining all of these terms was correct.

In the case of Robertson & Mueller v. Holden, 1 S.W.(2d) 570, Judge Speer of the Commission of Appeals, said:

"While court need not define in its instructions, ordinary words of simple meaning, those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined under Vernon's Ann. Civ. St. 1925, art. 2189, requiring explanations and definitions of legal terms in cases submitted on special issues."

It is evidently true that the term used in the charge in the present case, "directly caused," is as simple a term and as clear in its meaning as it could be made. This being true, it was wholly unnecessary for the trial court to define said term, or to attempt to do so. "Directly caused" or "directly caused the injury," employs ordinary words of simple meaning—those which an ordinary person would readily understand. This being true, why should the meaning of the term "directly caused" be beclouded by a long complicated attempt to define what needs no definition? In fact, we think it very clear that instead of using the term, "proximate cause," the court was correct in using the term "directly caused." If the court had used the term "proximate cause," and defined same as it is usually defined, which requires a very lengthy and complicated instruction, and in defining "proximate cause" had been required to define also "new and intervening cause," as included in "proximate cause," the definition of said two terms would have been exceedingly complicated and difficult to understand, and doubtless would have required numerous instructions involving the definition of "proximate cause" and "intervening cause"; but by coming directly to the point, as the trial court did, and by using the term "directly caused," rendered said term simple and easy to be understood, and obviated the necessity of attempting to define something that needed no definition, and was about as clear as any term could be expressed. The term "directly caused" has been used by the appellate courts of this and other states frequently in the place of "proximate cause." In Meyer v. Milwaukee Electric R. & Light Co., 116 Wis. 336, 93 N. W. 6, 8, the Supreme Court of Wisconsin, said: "It is not essential that the negligence should be the direct cause of the injury. * * * It is apparent, however, that all of these imperfections or errors in the instruction are favorable to the appellant. They require the jury, in order to ascribe the injury to its negligence, to go further than the law requires; hence they could not have been prejudicial to the appellant in bringing about the affirmative answer."

In other words, in the case cited, the Supreme Court of Wisconsin held that it was not error for the trial court to inquire if the negligence was "the direct cause" of the injury. To the same effect are the decisions in Alamo Iron Works v. Prado (Tex. Civ. App.) 220 S. W. 282, 289 (writ dismissed); Missouri, K. & T. Railway Co. v. Lyons (Tex. Civ. App.) 53 S. W. 96, 97 (writ refused); Galveston, H. & S. A. Railway Co. v. Averill (Tex. Civ. App.) 136 S. W. 98 (writ refused); and Texas & N. O. Railway Company v. Black (Tex. Civ. App.) 44 S. W. 673 (writ refused).

As said by the Court of Civil Appeals in Alamo Iron Works v. Prado, supra, "We do not, as said in Railway v. Oram [(Tex. Civ. App.) 92 S. W. 1029], supra, with respect to a failure to define proximate cause, see how the jury could have been misled by the failure to give a charge defining direct cause in this case. Direct cause needs no definition to define it, yet its meaning might be amplified; but we do not think the court erred in this ruling."

This case was dismissed by the Supreme Court for want of jurisdiction.

In the case of Missouri, K. & T. R. Co. v. Lyons, supra, Judge Finley of the Court of Civil Appeals, said: "It is urged, first, that the use of the word 'directly' conveyed an erroneous impression, it being a stronger word than 'proximately.' We are cited to no case holding the use of the term 'directly' in such a charge to be error. * * * The term 'directly' is synonymous with the word 'immediately,' and in this sense denotes closeness of connection, next in order, etc. In 3 Rap. & M. Ry. Dig. p. 244, we find cited two West Virginia cases sustaining the use of the term 'directly.' Riley v. Railroad Co., 27 W. Va. 145; Cawley v. Railroad Co., 31 W. Va. 116, 5 S. E. 318. It is manifest that the jury could not have been misled by the expression."

In the case just cited, a writ of error was refused by our Supreme Court.

In the case of Galveston, H. & S. A. R. Co. v. Averill (Tex. Civ. App.) 136 S. W. 98, at page 100, the court said: "There was no error committed by the court in charging that: 'By proximate cause, as used in this charge, is meant the direct cause, without which the injury would not have happened.'"

In this case a writ of error was denied by our Supreme Court. In the case at bar there does not appear to be any suggestion of an intervening agency between the act and the result and if the defendant did the act, as found by the jury, the injury was the natural and logical result thereof. The term "directly caused" was much more favorable to the defendant than would have been the term "proximately caused," and we do not think the defendant has any right to complain. Appellant's first and second propositions are overruled.

Under appellant's propositions Nos. 3 and 3-A it is contended that the court committed error in the manner of submitting special issues. The record shows there were

12 special issues comprising four groups given to determine if appellant was guilty of negligence in any one of said groups. The jury found appellant was guilty of negligence in respect to the matters about which inquiry was made in each of said groups, and that such negligence directly caused the injuries. Additional special issues were given to determine if appellee was guilty of contributory negligence in respect to the matters about which inquiry was made. In each of said last named issues the jury found appellee was not guilty of contributory negligence. It will thus be seen that all the issues, those establishing against appellant liability for damages, and those exonerating appellee from any contributory negligence, were given, fixing the rights and liabilities of the parties before the charge dealing with the amount of damages, if any, was presented to the jury. The charge is not open to the criticism made by appellant. D. & H. Truck Line v. Hopson (Tex. Civ. App.) 4 S.W.(2d) 1013; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661; Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423. The Lavallee charge reads: "If, in response to the foregoing issues, you have answered that the defendant's employee was negligent and that such negligence caused the collision, and if you have also answered that the plaintiff was not guilty of contributory negligence, then you will answer the following question; otherwise you need not answer the following question."

To the same effect are the charges in the Hopson Case above referred to, and also the Longoria Case to which reference is made above. We have carefully examined the questions here raised and find that no error is shown in connection with the submission of special issues, as alleged by appellant. Appellant's propositions 3 and 3-A are overruled.

■■ Appellant's propositions 5 to 10, inclusive, will be considered together. We will not be able to consider all these propositions at length, but only briefly in the interest of brevity. The insurance policy, which had been issued to cover the truck involved in this accident and which was being operated as a motor carrier, was filed with the Railroad Commission for the protection of the public as required by law, and the insurance company was accordingly made a party defendant in this suit. The statute under which the insurance policy was issued and filed with the commission is article 911b of section 13, Vernon's Annotated Civil Statutes, and the law provides that before any motor carrier can operate, he shall file with the commission a policy of insurance which obligates the insurance company to pay all judgments which may be recovered against the motor carrier, and such judgment must be paid by the insurance company "irrespective of the solvency or insol-

vency of the motor carrier." The statute also provides that the insurance policies must be kept in effect at all times "so as to provide continuous and unbroken protection to the public having legal claims against such motor carrier." The statute also provides that if the operator of the truck leaves the state so that he cannot be sued jointly with the insurance company and a judgment cannot be obtained against him, then the injured person can sue the insurance company alone without joining the truck operator and force the insurance company to pay the damages. In other words, the statute makes it clear that the insurance was for the protection of the public—that it was liability insurance creating a direct and an enforceable obligation on the part of the insurance company—in favor of the insured person. The very fact that the law requires insurance shows per se that the Legislature considered it a matter of public concern, and that it was for the protection of the public, inuring directly to the benefit of the insured person. Further, the policy also provides that the insurance company will take entire charge of all claims and defend all suits and the evidence shows that the company is conducting the defense of this suit, as provided by the policy. In this case a judgment has been obtained against the motor carrier (Norton) and the appellants do not deny that the policy of insurance legally obligates the insurance company to pay said judgment as per the obligations of said policy. The insurance was required by law and it is inconceivable that the lawmakers in passing legislation to protect the lives and property of the citizens would require each injured person, in seeking recovery on the insurance given for his protection, to bring and maintain two successive suits instead of one. All such statutes and policies of insurance are construed most favorably to the public and beneficiaries, and most strongly against the insurer. Appellants do not cite a single case holding that it was improper to join the insurance company in this case. In American Fidelity & Casualty Co. v. Williams (Tex. Civ. App.) 34 S.W.(2d) 396, 402 (writ of error denied by Supreme Court), it is expressly held that it is proper to join the insurance company upon a policy filed with the Railroad Commission by a motor car operator. To the same effect is the holding in 5 Tex. Jur. 580 and 622; American Indemnity Co. v. Burrows Hardware Co. (Tex. Civ. App.) 191 S. W. 574; Commercial Union Assur. Co. v. Preston, 115 Tex. 351, 282 S. W. 563, 45 A. L. R. 1016. Our construction of section 11 of the Motor Bus Act (article 911a) is to require the operators of such public service vehicles to procure liability insurance rather than indemnity insurance. The language of the section is, in our opinion, clear upon that point. The Railroad Commission's order also requires liability insurance. 5 Tex.

Jur. 661, 662. One of the leading Texas cases on this subject is American Auto. Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534 (writ refused), where it is held proper to join the insurance company in a suit against a service car operator, the insurance having been given under the requirements of a city ordinance. The Supreme Court denied a writ of error in that case and sustained a joint judgment against the service car operator and the insurance company. The rule has often been announced in Texas, that, "when two causes of action are connected with each other, or growing out of the same transaction, they may be properly joined, and in such suit all parties against whom the plaintiff asserts a common or an alternative liability, may be joined as defendants." See Clegg v. Varnell, 18 Tex. 294; Love v. Keowne, 58 Tex. 191; Jones v. Ford, 60 Tex. 127. It was proper in this case for the insurance company and Norton to be joined as defendants. See Pickens v. Seaton (Tex. Civ. App.) 51 S.W.(2d) 1050; Monzingo v. Jones (Tex. Civ. App.) 34 S.W.(2d) 662 (writ dismissed); American Automobile Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534, par. 3 (writ refused); Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423 (writ dismissed). These propositions from 5 to 10 are hereby overruled.

■ Under appellant's thirteenth proposition it is contended that "it was entirely improper to allow the plaintiff's counsel to state to the jury that issues Nos. 1 to 12 are the plaintiff's issues, and that issues 13 to 33 present the questions as to whether the plaintiff was guilty of contributory negligence, and to answer the first 12 questions 'Yes' and the 13th on down through the 33rd 'No,' because thereby counsel informed the jury as to the effect of their verdict and the said argument was outside the record and improper." There is nothing in the record to indicate that any part of the argument was outside the record, nor that any part of it was improper. In Dallas Railway & Terminal Co. v. Bankston, 51 S.W.(2d) 304, at page 310, the Commission of Appeals said: "Much latitude is allowed an attorney in presenting his client's cause to the jury. Broadly speaking, counsel may exercise the right to advise the jury how, in his opinion, from the evidence, the issue submitted should be answered. He may specifically say issues from 1 to 20 should be answered 'Yes,' or issues from 21 to 35 should be answered 'No,' but it would be highly improper for counsel to appeal to the jury that if they wanted plaintiff or defendant to recover in the suit to answer the issues in a certain way."

It will thus be seen that the case cited last above is directly in point, and, according to said holding of our Supreme Court through the Commission of Appeals, no error is here shown. This proposition is overruled.

We have carefully considered all of appellants' propositions bearing upon the question of argument and do not think that any error is shown in any of them.

All of appellants' propositions are hereby overruled and this cause affirmed.

ALEXANDER, Justice (concurring).

The most serious question in this case is that raised by the appellants in their second assignment of error. The court, in the first and second issues submitted to the jury, inquired whether a "boomer handle" was permitted to protrude from the side of appellant Norton's truck, and, if so, whether the same was negligence. The third issue submitted was as follows: "Did such negligence, if any, directly cause the accident and any injury to the plaintiff, as alleged in the petition."

By another group of questions the court inquired whether defendant's employee operated the truck upon the left side of the road, whether this was negligence, and whether such negligence directly caused the accident, etc., and by a third group the court inquired whether said employee operated the truck so close to plaintiff's automobile that the attachments on the truck struck plaintiff's arm, whether this was negligence and whether such negligence directly caused the accident or any injury to the plaintiff, etc. The jury answered each of said groups of issues in the affirmative. Appellants objected to the submission of said third issue and to the similar issue in each of said groups of issues as follows:

"Said question submits an immaterial issue to the jury,—the proper issue to submit being as to whether or not the said negligence was the proximate cause of the plaintiff's injuries, and the giving of said special issue is prejudicial to the defendant."

The court overruled said objection and did not submit in his charge any issue of whether either of said acts of negligence was the proximate cause of appellee's injuries. The action of the court in overruling said objection constitutes the basis of appellants' said second assignment of error.

I am of the opinion that the court did not err in so submitting the issues. The term "directly" is a stronger term than "proximate" and the court, by using the phrase "directly caused" instead of "proximate cause" as requested by appellants, placed a greater burden on the appellee than was required by law. If the appellee was willing to assume this extra burden, the appellants have no right to complain.

The appellants are apparently of the opinion that the court should have submitted the issue as to whether such negligence was

the proximate cause of plaintiff's injury and that such issue should have been followed by such definition of "proximate cause" as would have excluded any intervening agency and have required the jury to find that the injury sustained by plaintiff, or some similar injury, ought to have been foreseen as the probable result of the negligent act. The finding of the jury, however, that such negligence "directly caused" the injury to plaintiff excluded the idea of any intervening agency. Moreover, the evidence did not raise the issue of intervening agency and there was, therefore, no need for a charge thereon. Greer v. Thaman (Tex. Com. App.) 55 S.W.(2d) 519, par. 6. Whether or not the injury to plaintiff should have been foreseen was not material in determining whether or not the negligent act complained of caused the injury. Causation or whether or not an act caused a given result is not dependent on "foreseeability." "Foreseeability" is material in determining the existence of negligence, for if one could not foresee that injury would result to another as the consequence of his acts, he would not·be guilty of negligence; but whether or not the injury could have been foreseen has nothing to do with the problem of whether the act complained of caused the injury. Whether or not a given act caused the injury complained of can be determined as well without knowing whether the result could have been foreseen as a probable consequence of the act as it could with knowledge of such act. See Texas Law Review, Vol. 1, page 240.

If the appellants desired to have the jury informed that the driver of the truck was not guilty of negligence in doing the things that he did, if he could not have foreseen or anticipated that injury would result therefrom, they should have requested the court to so charge the jury in connection with the definition of "negligence," or should have objected to the court's charge for the failure to so instruct the jury. The mere objection that the court failed to submit the issue of whether the defendant's negligence was the proximate cause of the injury was not sufficient where the court submitted the issue as to whether such negligence was the "direct cause" of such injuries. Whether or not the defendant's negligent acts directly caused the injury to the plaintiff was a material issue, and since the court submitted the same to the jury it was not necessary for the court to submit to the jury the issue of whether such negligent acts proximately caused plaintiff's injuries.

I am of the opinion that none of the other assignments present reversible error, and I therefore concur in the affirmance of the judgment of the trial court.

GALLAGHER, Chief Justice (dissenting).

I am not in accord with the majority of the court in their disposition of appellants' second assignment of error. The trial court, in the first and second issues submitted to the jury, inquired whether a "boomer handle" was permitted to protrude from the side of appellant Norton's truck, and if so, whether the same was negligence. The third issue submitted was as follows: "Did such negligence, if any, directly cause the accident and any injury to the plaintiff, as alleged in the petition?"

The jury answered each of said group of issues in the affirmative. Appellants objected to the submission of said third issue, as follows: "Said question submits an immaterial issue to the jury,—the proper issue to submit being as to whether or not the said negligence was the proximate cause of the plaintiff's injuries, and the giving of said special issue is prejudicial to the defendant."

The court overruled said objection and did not submit in his charge any issue of whether said act of negligence was the proximate cause of appellee's injuries. The action of the court in overruling ·said objection constitutes the basis of appellants' said second assignment of error. It is not understood that there is any contention that said assignment is not sufficient to invoke a ruling of this court on the issue presented therein. Neither is it understood that there is any contention that said objection was not sufficient under the rules of practice to require the trial court to amend his charge to meet the same, if appellants were entitled to such amendment. See St. Louis, S. F. & T. Ry. Co. v. Green (Tex. Com. App.) 37 S.W.(2d) 123, 125, par. 5, and authorities there cited.

The term "proximate cause" has been variously defined. We quote in this connection the definition given by our Supreme Court in the case of Gonzales v. City of Galveston, 84 Tex. 3, 7, 19 S. W. 284, 285, 31 Am. St. Rep. 17, as follows: "By 'proximate cause,' we do not mean the last act of cause, or nearest act to the injury, but such act, wanting in ordinary care, as actively aided in producing the injury, as a direct and existing cause. It need not be the sole cause, but *it must be a concurring cause, such as might reasonably have been contemplated as involving the result, under the attending circumstances.* Eames v. Railway, 63 Tex. 664, 665; Jones v. George, 61 Tex. 353 [48 Am. Rep. 280]; Seale v. Railway, 65 Tex. 277, 278 [57 Am. Rep. 602]; Brandon v. Manufacturing Co., 51 Tex. 128; 1 Thomp. Neg. 144; 2 Thomp. Neg. 1100, § 12 and note; 1 Suth. Dam. 20, 22." (Italics writer's.)

Assuming that the submission of the issue of whether appellant Norton's negligence was the "direct cause" of appellee's injuries ·was

sufficient on other phases of the definition above quoted, it is clear that it wholly failed to include the element of anticipation of possible injury as a result thereof. The importance of such element in determining the issue of proximate cause is forcibly stated by our Supreme Court, speaking through Chief Justice Phillips, in Galveston, H. & S. A. R. Co. v. Bell, 110 Tex. 104, 106, 216 S. W. 390, 391, as follows: "The test as to whether a given act may be deemed the proximate cause of an injury, is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act."

The rule so announced is supported by a practically unbroken line of decisions of our Supreme Court and the Commission of Appeals. St. Louis, S. F. & T. Ry. Co. v. Green, supra, par. 4, and authorities there cited; Union Stockyards v. Peeler (Tex. Com. App.) 37 S.W.(2d) 126, 128, pars. 3 and 4; City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 670, pars. 2 and 3, 27 A. L. R. 927; Payne v. Robey (Tex. Com. App.) 257 S. W. 873, 875, par. 2; Dallas Railway Co. v. Warlick (Tex. Com. App.) 285 S. W. 302, 304, par. 2; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 225, 38 S. W. 162; Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 370, 38 S. W. 756; International & G. N. R. Co. v. Walters, 107 Tex. 373, 377, 179 S. W. 854.

The majority opinions in this case hold that the action of the court in submitting whether appellant Norton's negligence was the "direct cause" of appellee's injuries was more favorable to appellants than the submission of a proper issue of proximate cause would have been, and that appellants' objection to such submission was therefore without merit. The effect of such holding is to deny appellants the right to require as a condition precedent to liability herein, a finding of the jury that appellee's injuries ought to have been reasonably anticipated as a result of permitting the boomer handle to protrude from the side of the truck.

In all the cases cited in the original opinion, the question under consideration seems to have been causal connection, rather than anticipation of resulting injury.

The jury found that several acts on the part of appellant Norton's employees constituted negligence. In each instance the court submitted whether such negligent act was the "direct cause" of appellee's injuries and like objection to such submission was made by appellants. The above discussion is therefore applicable in each such instance.

This case should, in the opinion of the writer, be reversed and remanded on appellants' second assignment of error.